UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EMMA MIRANDA,                          )
                                       )
              Plaintiff,               )          No. 13 C 02321
                                       )
       v.                              )
                                       )          Judge Edmond E. Chang
AUTO WARES GROUP OF COMPANIES,         )
                                       )
              Defendant.               )

## MEMORANDUM OPINION AND ORDER

Plaintiff Emma Miranda has brought suit under Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that her former employer, Defendant
Auto Wares Group of Companies, unlawfully retaliated against her by harassing
and discharging her after she supported a co-worker's charge of discrimination
against the company.[1] Auto Wares now moves for summary judgment on this
single-count complaint. For the reasons explained below, the motion is denied.

## I. Background

Because it is Auto Wares that moves for summary judgment, the evidence
must be taken in the light most favorable to Miranda, the non-moving party, with
all reasonable inferences drawn in her favor. *Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1]In this federal-question case, the Court exercises jurisdiction under 28 U.S.C.
§ 1331.

## A. Dispute over Schedule and Co-Worker's Discrimination Charge

Auto Wares operates an automotive parts distribution center and warehouse. R. 42, DSOF ¶ 1.[2] Miranda was employed as a parts stocker and picker at the distribution center. *Id*. ¶ 3. In March 2010, one of Miranda's co-workers, Velma Rodriguez, was involved in a dispute with the company, claiming Auto Wares failed to accommodate Rodriguez's religious beliefs by forcing her to work on Saturdays. *Id*. ¶ 6. Miranda became embroiled in the dispute because Auto Wares initially forced Miranda to move from a desirable Monday-to-Friday work schedule to a Tuesday-to-Saturday one in order to accommodate Rodriguez. PSOF ¶ 8. According to Miranda, she was called to the office of her supervisor Jose Avitia-Rocha, who "told [her] that [her] friend's job is in [her] hands." R. 42-4, Miranda Tr. at 91.

Miranda agreed to the schedule change, but Rodriguez lost her job anyway. R. 42-7, Pl.'s Answer to Def.'s First Set of Interr. at 5. The company then refused to move Miranda back to her original schedule despite multiple requests. PSOF ¶ 8. Although an employee ordinarily could request a different shift and any resulting conflicts were to be resolved on the basis of seniority, *id*. ¶ 9, a worker with less seniority than Miranda was allowed to continue working the Monday-to-Friday shift despite Miranda's request to reassume it. *Id*. ¶ 10.

---

[2]Citation to the docket is "R." followed by the entry number and, when necessary, the page or paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Auto Wares' Statement of Facts) [R. 42]; "PSOF" (for Miranda's Statement of Additional Facts) [R. 44 at 18-24]; "Pl.'s Resp. DSOF" (for Miranda's response to Auto Wares' Statement of Facts [R. 44 at 1-17]); and "Def.'s Resp. PSOF" (for Auto Wares' Response to Miranda's Statement of Additional Facts) [R. 47 at 23-33], followed by the paragraph number. Where the opposing party does not dispute a fact, the Court cites only to that the offering party's statement of facts.

After Rodriguez was fired, she filed a charge of discrimination against Auto Wares with the Illinois Department of Human Rights (IDHR) and the United States Equal Employment Opportunity Commission (EEOC). DSOF ¶ 5. According to Miranda, Rodriguez called her from the IDHR office and asked Miranda to testify as a witness on Rodriguez's behalf. *Id*. ¶ 12. Although Miranda does not recall ever discussing Rodriguez's termination or discrimination charge with either Robert Abate, general manager of the distribution center, or Terry Grieshaber, one of her shift supervisors, Miranda "led" Jose Avitia-Rocha (Miranda's supervisor) "to understand" that she would testify for Rodriguez. *Id*. ¶¶ 13, 14; Pl.'s Resp. DSOF ¶ 14.

Specifically, sometime after Rodriguez was terminated, Miranda warned Avitia-Rocha that Rodriguez might get her job back, saying, "Don't forget about [Rodriguez] because maybe she'll be here soon with us." DSOF ¶ 16. When Avitia-Rocha asked, "Why?" Miranda responded, "Because the law protects her, because the law protects her and I was on her side." *Id*. In a line worthy of a movie villain, Avitia-Rocha then laughed and told Miranda, "Yes, the same law that … protects you is the same law that protects her, no law." Miranda Tr. at 89. Miranda also told two co-workers, as well as their union representative (Miranda was a member of a union, DSOF ¶ 4), that she had decided to act as a witness for Rodriguez. PSOF ¶ 4. Miranda then asked the union representative if he would be willing to act as a witness too, because he had been present when Rodriguez was fired. *Id*. ¶ 5. In any event, Rodriguez later returned to Auto Wares in June 2010 as a full-time employee

3

after she was offered a newly vacant night-shift position that would not require work on Saturdays. *Id*. ¶ 7.

## B. Transfer to More Difficult Work and Back Injury

Three to four months after the end of Rodriguez's dispute, in September or October 2010, Miranda was transferred to work in zones L and G of the distribution center, where heavier items were located.[3] DSOF ¶ 17; PSOF ¶ 11. It is undisputed that up to this time, Avitia-Rocha, Abate, and the company's human resources representative had all been satisfied with Miranda's performance as a stocker/picker. PSOF ¶ 7. Contrary to Miranda's previously assigned zones, zone G contained rotors, oil, chemicals, and frequently large customer orders that were very heavy for Miranda to move. PSOF ¶ 12. Indeed, Auto Wares does not dispute that female employees were rarely if ever assigned to zone G. *Id*. ¶ 13. Miranda, who was 46 years old at the time (in 2010) and of small stature, asked Avitia-Rocha to be reassigned to more suitable zones. *Id*. ¶ 19. Although Auto Wares' computerized system was able to ensure an employee would not be assigned to certain zones, Miranda continued to be assigned to zone G. *Id*. ¶ 20.

In January 2011, Miranda injured her back at work while lifting a box of four-gallon motor oil jugs in zone G. PSOF ¶ 21. She was examined by the company's medical center and was released for work but with the following restrictions: no lifting over ten pounds, no bending greater than six times per hour,

---

[3]The parties dispute whether Miranda was assigned to these new zones exclusively or only partially. Def.'s Resp. PSOF ¶ 11. Auto Wares claims that it cannot locate employee assignment records which would clarify the question. PSOF ¶ 15. As discussed below, whether Miranda *only* worked in these zones or not is ultimately immaterial to the outcome of the motion.

and no squatting/kneeling. DSOF ¶ 20. Miranda was now unable to perform her regular job as a stocker/picker even with an accommodation. *Id.* ¶ 21. She was therefore assigned to do paperwork and then, on January 26, 2011, given a temporary, non-union cashier position. *Id.* ¶¶ 22, 23. The parties dispute whether Miranda's assignment as a cashier was made only due to a temporary staffing shortage at that position, or if a more permanent switch was feasible. DSOF ¶ 34; Pl.'s Resp. DSOF ¶ 34.

Miranda sought treatment from her own orthopedic surgeon, Dr. Andersson, who continued to restrict Miranda's ability to lift. *Id.* ¶ 25. In April 2011, Andersson cleared Miranda to resume work without restrictions. *Id.* ¶¶ 27, 28. At that point, Miranda, still working in the cashier position, was treated by a second physician, Dr. Espinosa. *Id.* ¶ 29. Espinosa restricted Miranda to sedentary to light duty with no lifting more than ten pounds or bending or twisting at the waist. *Id.* ¶ 30. Meanwhile, Miranda was also examined by a Dr. Graf in June 2011, at the request of Auto Wares' workers' compensation carrier. *Id.* ¶ 32. On June 23, 2011, the carrier informed Miranda that Graf had concluded that Miranda was capable of returning to full duty work. *Id.* ¶ 33.

On July 6, Abate told Miranda that she needed to return to her regular job, even though Miranda requested a continuing accommodation in the cashier position in light of her ongoing recovery. PSOF ¶ 30; Def.'s Resp. PSOF ¶ 30. Abate declined to let Miranda remain as a cashier despite characterizing her performance as good and despite the fact that two other employees, Joanne Lamotte and Christine

Wraith, who had started as union stocker/pickers had later been allowed to switch to the non-union cashier role permanently. PSOF ¶¶ 23, 24. In addition, according to Ruth Solverson, Auto Wares' human resources representative, at least one other stocker/picker, Nancy Slove, had been given an accommodation of unknown length to work as a cashier after Slove suffered a workplace injury. R. 44-1, Solverson Tr. at 28-29.

Abate stated that he would give Miranda "not too heavy stock," but about three hours into her shift on July 6, Miranda reported being hurt again. DSOF ¶ 37. Miranda was sent for an evaluation and released for work on the same day with restrictions on lifting, bending, and pushing/pulling objects. *Id*. ¶ 39. As a result, Miranda filed three separate written union grievances on July 7. DSOF ¶ 41. The following day, she received a written warning for allegedly filing the grievance improperly, although employees were not typically disciplined for incorrectly filing a union grievance. PSOF ¶ 32.

### C. Leave and Termination

At this point, Miranda elected to take her last week of vacation time in order to recover from her latest injury. PSOF ¶ 31. When she returned on July 14, 2011, her credentials to enter the building had been deactivated and other employees were surprised to see her. *Id*. ¶ 33. Miranda was told by Abate and Avitia-Roche that she should not return to work until she could perform her regular stocker/picker duties. *Id*. ¶ 35. Miranda then received two letters explaining that her employment was terminated. *Id*. ¶¶ 36, 37.

After a meeting with Miranda and the union, however, the company agreed to convert Miranda's discharge into leave under the Family and Medical Leave Act. *Id*. ¶ 38. Miranda was given FMLA leave through November 12, 2011. DSOF ¶ 52. When Miranda returned to work on November 15, she presented conflicting reports from two additional physicians, one clearing her for work and the other recommending continuing restrictions on lifting and carrying. *Id*. ¶¶ 53, 55-56. Because Miranda was prepared only to return to work with the same accommodation as before, her employment was again terminated. PSOF ¶ 39. Although the termination notice stated that Miranda was fired because she had not worked at the plant for three months or more, it also advised her that if and when she became "able to perform the essential functions" of stocker/picker "with or without reasonable accommodation(s)," she should contact the company, DSOF ¶ 60, presumably to apply for a stocker/picker job.

### D. First EEOC Charge, Settlement, and Second Charge

On May 8, 2012, Miranda filed a charge against Auto Wares with both the EEOC and the IDHR, asserting that she was discriminated against on the basis of disability. DSOF ¶ 65. The parties elected to mediate the charge at a mediation session held by the IDHR on August 22, 2012, in which Miranda participated through an interpreter. *Id*. ¶ 66. The parties reached a settlement, which was reduced to a handwritten document that read, in relevant part, that in exchange for a payment of $1,000, Miranda "[a]grees to withdraw [the discrimination charge as pending before the EEOC and IDHR]" and that:

both parties agree that this will remain confidential and if questioned both parties will state that the matter has been resolved. Both parties understand that this agreement does not include charges pending with workman's compensation.

*Id*. ¶ 68. The document was signed by Miranda, her interpreter, and Abate. *Id*. Miranda also signed a voluntary withdrawal of charge request form and a waiver agreement. *Id*. ¶ 71.

Despite signing the handwritten settlement document, Miranda contends that she did so because, at the suggestion of the mediator and the interpreter, she intended to withdraw her first charge and file a separate charge alleging retaliation by Auto Wares, which would more accurately describe her claim. PSOF ¶ 1. Miranda did not inform Abate of this intention. DSOF ¶ 70. Miranda was later sent the $1,000 settlement check but did not cash it. *Id*. ¶¶ 72, 73.

On September 10, 2012, Miranda filed her second charge of discrimination with the EEOC and IDHR, this time claiming unlawful retaliation in the form of harassment, different treatment, and wrongful termination. *Id*. ¶ 74. Miranda also sought to have the IDHR rescind her voluntary withdrawal and settlement in her first charge, which the IDHR denied for lack of sufficient cause to undo the agreement that had been reached at mediation. *Id*. ¶ 75. After the EEOC issued Miranda a notice of right to sue in January 2013, Miranda filed this lawsuit. *Id*. ¶¶ 76, 77.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). . The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

Auto Wares asserts that it is entitled to summary judgment because the parties' prior August 2012 settlement agreement bars Miranda's present claim and,

in the alternative, the evidence is insufficient even in the light most favorable to her to establish unlawful retaliation. R. 43, Def.'s Br. at 3-4. Both arguments fail.

## A. Only the Firing is Timely Filed

As an initial matter, the applicable statute of limitations for retaliation claims under Title VII—300 days to file an EEOC charge—is important in this case to identify the precise claims that Miranda may pursue. 42 U.S.C. § 2000e-5(e); *see also Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). Because Miranda filed her second charge of discrimination on September 10, 2012, only claims that arose within the prior 300 days, or after November 15, 2011, are actionable. Miranda alleges that she suffered harassment and different treatment (for instance, assignment to a less desirable shift, refused permission to switch to a light duty position), R. 45, Pl.'s Resp. Br. at 2, but these instances occurred before November 15, 2011 and are thus time-barred. The only adverse action taken against her that is timely filed (and Auto Wares concedes that it is timely filed, Def.'s Br. at 2) is her allegedly retaliatory discharge, which occurred on November 17, 2011.

It should be noted, however, that although the non-discharge acts are not independently actionable, they *are* relevant to the extent that they reflect evidence of motive or intent by Auto Wares to retaliate against Miranda, as discussed below. *See, e.g., Anbudaiyan v. Illinois Dep't of Fin. & Prof'l Regulation*, 2012 WL 2525696, at *4 (N.D. Ill. June 29, 2012).

## B. Prior Settlement Agreement Does Not Bar Claim

The next issue to consider is whether the handwritten settlement agreement signed by Miranda during the mediation session held at the IDHR prevents her from bringing the present claim. Auto Wares argues that because the release of Miranda's first charge expressly excluded only any workers' compensation claim from the scope of the agreement, it thus covers Miranda's second charge, even if it was filed based on a separate legal theory of retaliation. Def.'s Br. at 3.

"A settlement agreement is a particular kind of contract, and so contract law (here, the law of Illinois) governs." *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008) (citing *Laserage Technology Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)). In order to give effect to the intent of the parties when construing a contract, Illinois law "follows the objective theory of intent, whereby the court looks first to the written agreement and not to the parties' subjective understandings." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) (citation omitted). Courts must construe contractual language according to the contract's plain and obvious meaning. *Krilich v. Am. Nat'l Bank & Trust Co. of Chi.*, 778 N.E.2d 1153, 1164 (Ill. App. Ct. 2002).

In essence, Auto Wares wants to characterize the settlement agreement as a general release, arguing that Miranda "certainly knew how to exclude claims from the settlement agreement" and "could have sought to exclude her retaliatory discharge claim," yet did not. Def.'s Br. at 3. It should go without saying that this is not how releases work. The plain language of the agreement as written, which must

govern, states only that Miranda "agrees to withdraw IDHR CHARGE # 2012 cf3240 and EEOC CHARGE # 21BA21654 [the corresponding agency file numbers for the first charge]." R. 42-39, Settlement Agreement. It says nothing about a broader release of other possible claims, past or present, nor does the fact that it does exclude any workers' compensation claim somehow imply otherwise. Put it this way: Auto Wares certainly knew how to *include* claims in the settlement agreement and could have very easily negotiated for general release terms. But it did not. Because there is no ambiguity to the language of the agreement, there is no reason for the Court to construe it by anything but its plain language, *see Allied Asphalt Paving Co. v. Vill. of Hillside*, 731 N.E.2d 425, 429 (Ill. App. Ct. 2000), and the release does not preclude Miranda's suit as a matter of law.

## C. Reasonable Jury Could Find Retaliation

The Court turns, then, to the substance of Miranda's retaliation claim. Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to retaliate against an individual who "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). A plaintiff may use either a direct or indirect method of proof in support of a retaliation claim. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). "To establish retaliation under the direct method, a plaintiff must present evidence, direct or circumstantial, showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse

action; and (3) a causal connection exists between the two." *Id.* (citing *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006)). When the facts are viewed and reasonable inferences are drawn in the light most favorable to her, Miranda has satisfied this burden.

### 1. Protected Activity

First, there is enough evidence for a jury to reasonably find that Miranda did engage in protected activity. Auto Wares argues that Miranda neither opposed an unlawful practice nor participated in any investigation, the two possible forms of protected activity set forth in Section 2000e-3(a). Def.'s Br. at 5-6. It is true that Miranda never actually testified on her co-worker's behalf; it never got to that point, because Rodriguez returned to work on satisfactory terms. PSOF ¶ 7. Yet Auto Wares does not dispute for purposes of the motion that, when the charge was still pending, Miranda did oppose the alleged discriminatory treatment of Rodriguez by telling Avitia-Rocha that the law protected Rodriguez, DSOF ¶ 16, agreeing to be a witness for Rodriguez and telling her co-workers of her intention to be a witness, PSOF ¶ 4, and also lobbying her union representative to convince the representative to testify on Rodriguez's behalf, *id.* ¶ 5. Given that Miranda was also centrally involved in the dispute over Rodriguez's work schedule (remember, Miranda was the one forced to take the Saturday shift to accommodate Rodriguez, having been told by Avitia-Rocha that her coworker's job was in her "hands"), Miranda Tr. at 91, a jury could reasonably find that Miranda's public actions, including her rebuke to Avitia-Rocha, constituted taking "some step in opposition"

to Auto Wares' alleged discriminatory failure to accommodate Rodriguez. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631, 634 (7th Cir. 2011) (employee's expression of opposition to employer's treatment of coworker constituted cognizable basis for retaliation claim). And, moreover, Auto Wares nowhere argues that this opposition was not based on Miranda's good-faith and reasonable belief that the company's treatment of Rodriguez was unlawful. *See, e.g.*, *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010) (opposition not actionable if belief of unlawfulness is unreasonable).

It matters not that Miranda was opposing discrimination against Rodriguez, rather than against herself. The Seventh Circuit, like other courts, has long held that "assisting another employee with … [her] discrimination claim, as well as other endeavors to obtain the employer's compliance with Title VII, is protected 'opposition conduct.'" *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996). All told, there is no basis to doubt that, given the benefit of the doubt afforded her at this stage, Miranda's actions qualify as protected activity under Title VII's anti-retaliation provision.

### 2. Causal Connection

No one disputes that the second element of the direct method of proof—a materially adverse action—was satisfied when Miranda was fired. So the final question is whether there is a causal connection between her protected activity and the firing. The Supreme Court has recently clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," that

is, "the unlawful retaliation would not have occurred in the absence of" the protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013) (contrasting this standard to the "lessened causation test" applicable to straight discrimination claims).

Except in the case of the most egregious (or careless) employer, smoking-gun evidence of causation is uncommon. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716 (1983) ("There will seldom be 'eyewitness' testimony as to the employer's mental processes."). As a consequence, plaintiffs must typically resort to circumstantial evidence as part of the so-called "convincing mosaic" approach, evidence that roughly falls into three categories: "(1) suspicious timing, ambiguous statements and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 570 (7th Cir. 2012) (citing *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012)). Here, viewing the facts in Miranda's favor, there are enough discrete pieces of evidence to fill out a convincing mosaic, at least one that depicts enough of a portrait of retaliation to get past summary judgment.

To begin, it is true that the element of suspicious timing is absent. Miranda agreed to testify for Rodriguez, making her support for her coworker known, in or around March 2010; she was not terminated for good until November 2011. Auto Wares argues that this extended interval weakens any inference of retaliation.

Def.'s Br. at 7. Granted, taken on its own, the 20 months or so that elapsed do not tend to support Miranda's claim; however, as the very case on which Auto Wares relies attests, even "if the time interval standing alone is long enough to weaken an inference of retaliation, the plaintiff is entitled to rely on other circumstantial evidence to support her claim." *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014). In *Malin*, an employee alleged that a failure to promote in 2006 was motivated by retaliatory intent after she made, back in 2003, an internal complaint of sexual harassment. *Id.* Although the three-year interval in itself lent no support to an inference of retaliation, the Seventh Circuit held that evidence of other retaliatory behavior within that period "bridge[d] the gap between the two events, leaving the issue of causation for a jury at trial." *Id.* at 554 ("[W]e reject the idea that the passage of a particular amount of time between protected activity and retaliation can bar the claim as a matter of law."). Just so here, where Miranda has pointed to other instances of retaliatory behavior between her initial advocacy (in March 2010) for Rodriguez and Miranda's eventual firing (in November 2011).

Accepting the facts in Miranda's favor, as the Court must, these include: Auto Wares' refusal to return her to her previous, more desirable work schedule after Rodriguez was fired in 2010, despite the switch being Miranda's by right of seniority, PSOF ¶¶ 8, 9; Miranda's assignment in September or October 2010, for the first time ever, to work (whether exclusively or not) in a physically demanding zone of the distribution center, one where other women were typically not assigned, *id.* ¶ 13; the company's failure to switch her out of that zone despite such

16

reassignments being routinely possible, *id.* ¶ 20; the unusual discipline imposed on

her in July 2011 for incorrectly filling out a grievance form when no other employee

had ever been so disciplined, *id.* ¶ 32; and the refusal to keep Miranda as a cashier

between July and November 2011 despite her qualification for the position and the

fact that such switches had been made for other employees, *id.* ¶¶ 23, 30.[4] There

was also Avitia-Roche's statement to Miranda that "no law" protects her, Miranda

Tr. at 89, which is evidence of retaliatory motive when viewed in the light favorable

to Miranda. This chain of negative job actions against Miranda provides ample

ground for a reasonable jury to "infer that" Auto Wares "had a long memory and

repeatedly retaliated against" Miranda between March 2010 and November 2011.

*Malin*, 762 F.3d at 560. Indeed, it is not beyond reason to infer from these facts that

the stated, legitimate reason of Miranda's discharge, her inability to continue her

duties as a picker, was pretextual[5]—in the sense that it was caused by her

---

[4]It bears noting that the refusal to assign her as a cashier resembles a failure-to-accommodate claim under the Americans with Disabilities Act. *See generally Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). Under the ADA, an employer can be found to have unlawfully refused a reasonable accommodation if it declined to provide an alternate position when there was no undue hardship in providing the alternative. *See Gile*, 95 F.3d at 499. But that type of claim is not at issue in this case, and in any event, the refusal to keep her reassigned as an independent, actionable example of retaliation is time-barred. See the discussion *supra* at § III.A. However, even though the refusal to assign Miranda as a cashier is not a stand-alone claim in this case, a jury could still infer from Auto Wares' refusal to accommodate Miranda as evidence of retaliatory motive.

[5]Auto Wares' termination letter officially stated that the reason for her termination was that she had not worked for three months. DSOF ¶ 59. This explanation is inconsistent with Auto Wares' acknowledgement that the company had allowed Miranda to take FMLA leave in the months leading up to her discharge. *Id.* ¶ 52. The termination letter also invited Miranda to contact the company once she could perform her former duties as stocker/picker, *id.* ¶ 60, so a jury could reasonably infer that Auto Wares' proffered reason was really that Miranda was failing to perform the stocker/picker role, and in turn that Auto Wares set up Miranda for that failure as a form of retaliation.

continued, retaliatory assignment to unusually back-breaking work in the first place and, even more so, because keeping Miranda on as a cashier seemingly would have posed no burden on the company.

One final point: implicit in demonstrating retaliatory motive is that an employer was aware of the target's statutorily protected activity. *See Durkin v. City of Chicago*, 341 F.3d 606, 614 n.4 (7th Cir. 2003). Auto Wares ventures that there is no evidence that anyone involved in retaliating against Miranda "had any knowledge of Ms. Miranda's alleged comments to Mr. Avitia-Rocha." Def.'s Br. at 8. But Avitia-Rocha was Miranda's supervisor and was in a position to take the negative job actions described above. For instance, it was to Avitia-Rocha that rejected Miranda's request to be transferred out of zone G, PSOF ¶ 19, and it was Avitia-Rocha that together with Abate told her that she could not continue working unless she resumed her old position, effectively denying her accommodation request, *id*. ¶ 35. It takes no great leap for a jury to conclude that Avitia-Rocha, who was himself certainly aware of Miranda's comments (which constitute her protected, opposition activity) *to him*, conveyed those sentiments to the rest of management.

Accordingly, Miranda has convincingly set forth a series of facts that show that there is a genuine dispute of material fact that justifies a trial, based on the direct method of proof in retaliation claims.

### 3. Indirect Method of Proof

Even though Miranda may proceed to trial on her retaliation claim based on the direct method of proof, it is worth discussing, in the interest of completeness,

that she meets her burden at this stage based on the so-called indirect method as well. This approach requires Miranda to show that "(1) [s]he engaged in a statutorily protected activity; (2) [s]he met h[er] employer's legitimate expectations, i.e., [s]he was performing h[er] job satisfactorily; (3) [s]he suffered a materially adverse action; and (4) [s]he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." *Harper*, 687 F.3d at 309 (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). In a sense, the indirect approach represents a lower burden because "a plaintiff so proceeding need not show even an attenuated causal link." *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

As already discussed, for purposes of this motion, Miranda has established that she engaged in a statutorily protected activity. Auto Wares and its management conceded that she met their work expectations as a stocker/picker, until she became injured, and then as a cashier. PSOF ¶¶ 7, 23. It is also undisputed that Miranda suffered a materially adverse action when she was fired. Finally, with the facts viewed in her favor, Miranda has also shown that she was treated less favorably than other, similarly-situated employees. She has identified two employees, Joanne Lamotte and Christine Wraith, who like Miranda were union-member stocker/pickers but, unlike Miranda, were allowed to switch permanently to cashier positions. PSOF ¶ 24. Ruth Solverson, the human resources representative, also testified that another union stocker, Nancy Slove, worked as a non-union cashier as an accommodation after suffering a workplace injury for an

unspecified period of time. Solverson Tr. at 28-29. These examples contrast directly with the company's treatment of Miranda. Slove in particular provides "enough common features between the individuals," in this case their common position and the fact that both were injured, "to allow for a meaningful comparison." *Harper*, 687 F.3d at 310 (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)) (alteration omitted). Slove was accommodated without an apparent end-date and yet Miranda was not, and a jury is free to draw conclusions about whether the difference is attributable to Miranda having engaged in protected activity.[6] In sum, Miranda has met her burden of establishing sufficient evidence, at this stage, of retaliation under the indirect proof method.

---

[6]For purposes of this summary judgment motion, Auto Wares also has conceded that, unlike Miranda, employees were generally allowed to claim shifts based on seniority, women were not assigned to zone G, and union members were never disciplined for "improperly" filing grievances. Even though the company acknowledges, implicitly via this concession, that there could be comparators for these examples of adverse actions, the lack of further details identifying specific, similarly-situated employees means that Miranda cannot rest an indirect proof of retaliation approach on these instances. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (cautioning against a "hyper-technical approach" that requires an explicitly identical comparator but requiring nonetheless individuals for whom materially relevant details are known). Still, questions about what evidence is specifically admissible for trial are separate from the indirect method of proof framework, which is really part of a unique summary-judgment analysis.

## IV. Conclusion

For the reasons described above, there are genuinely disputed material facts on Miranda's retaliation claim, so Auto Wares' motion for summary judgment is denied.

ENTERED:


_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: January 20, 2015